

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| v. | NO. 18-249-3 |
| JAMAAL BLANDING | |

## MEMORANDUM RE: MOTION TO SUPPRESS

Baylson, J.                                                             June 24, 2019

### I. Introduction and Background

Defendant, Jamaal Blanding, was arrested on state charges following a traffic stop of the vehicle he was driving on October 25, 2017. Certain evidence was seized from the vehicle, including two cell phones, mail, currency, and other papers. Subsequently, the FBI secured a search warrant for the cell phones, and the Court understands that the contents of the cell phones, and possibly other items seized from Defendant's vehicle, are likely to be introduced as evidence at the upcoming trial.

On October 17, 2018, a grand jury returned a Superseding Indictment against nine Defendants, including Mr. Blanding, who is accused of four counts of conspiracy to distribute controlled substances in violation of drug trafficking provisions. (ECF 16.) Defendant has filed a Motion to Suppress evidence obtained during the traffic stop based on violations of his constitutional rights, which was supplemented three times. (ECF 162, 195, 197, 282.)[1] The Government has filed a Response in opposition, which was supplemented once. (ECF 203, 256.) Defendant has also filed a Reply in support of the Motion. (ECF 276.) Defendant's Motion

---

[1] Defendant moves to suppress "all physical and digital evidence" derived from the October 25, 2017 traffic stop, including the mail, bills, and other papers. However, the supplemental Motions to Suppress only raise arguments regarding Defendant's cell phones.

was the topic of an evidentiary hearing on April 16, 2019. (ECF 206, 207, 235.) The hearing was followed by a Court Order identifying several issues for briefing and oral argument on June 17, 2019. (ECF 210, 277, 285.) The Court has carefully reviewed the evidentiary record and the briefs, and for the reasons discussed below, the Court will deny the Motion.

**II.    Discussion**

**A. Reasonable Suspicion to Conduct the Traffic Stop**

Initially, the Court finds that the traffic stop in this case was lawful because it was based on Philadelphia Police Officer Michael Vargas's reasonable suspicion that Defendant committed a traffic violation, which is the appropriate test. Briefly stated, FBI Task Force Officer Gregory Stevens contacted Officer Vargas to ask him to attempt to locate a car driven by Defendant, which the FBI had reason to believe contained contraband. As Officer Vargas credibly testified, he observed the car travel northbound on Route 1 and enter an exit lane toward Wissahickon Avenue. Officer Vargas testified that he was approximately two car lengths behind the car when he observed the car roll through a stop sign as it proceeded toward Wissahickon Avenue and come to a stop in a crosswalk zone at the intersection of Abbotsford Avenue and Wissahickon Avenue. As a result, Officer Vargas conducted a traffic stop of Defendant's vehicle on Roberts Avenue.

After extensive testimony, and also argument and briefing, the Court concludes that Officer Vargas had grounds to stop Defendant, independent of, and supplemented by, information transmitted from Officer Stevens to Officer Vargas over police radio. Although the Government does not specifically rely on the FBI call to support its opposition, the Court finds it to be a valid component of the reasonable suspicion that justified the traffic stop. See Navarette v. California, 572 U.S. 393, 397 (2014) ("The [reasonable suspicion] standard takes into account 'the totality of

2

the circumstances–the whole picture.'" (quoting United States v. Cortez, 449 U.S. 411, 417 (1981))); United States v. Torres, 534 F.3d 207, 210 (3d Cir. 2008) ("When officers are told to investigate a situation by a police dispatcher, . . . the court must look beyond the specific facts known to the officers on the scene to the facts known by the dispatcher. . . . [T]he knowledge of the dispatcher is imputed to the officers in the field when determining the reasonableness of the [traffic] stop.").

While Officer Vargas specifically stopped Defendant for coming to a stop in a crosswalk, the Court finds there were grounds to stop Defendant because he went through a stop sign prior to coming to the crosswalk. There is some evidence that the crosswalk was not marked as such.

The Government has pointed out that while the Pennsylvania Motor Vehicle Code prohibits drivers from stopping in a crosswalk, it does not require that the crosswalk be painted or marked. See 75 Pa.C.S. §§ 102, 3710. Officer Vargas did not give Defendant a citation for a traffic offense. Defendant's failure to come to a full stop before turning onto Wissahickon Avenue would have been very dangerous because the stop sign is not flush with the borders of the intersection. Given the unique location of the stop sign behind the actual intersection, which requires any vehicle approaching Wissahickon Avenue to stop in what constitutes a crosswalk, Defendant could not have been properly convicted of a traffic violation if one had been issued. However, that is not the legal test to determine the constitutionality of the stop.

The leading Supreme Court case on the reasonableness of traffic stops is Whren v. United States, 517 U.S. 806 (1996), where the Supreme Court unanimously held that the constitutional reasonableness of a traffic stop does not depend on the subjective intent of the officers involved. The Supreme Court has been clear that a traffic stop is lawful if based on reasonable suspicion,

3

which is "'a particularized and objective basis for suspecting the particular person stopped' of breaking the law." Heien v. North Carolina, 574 U.S. 54, 135 S.Ct. 530, 536 (2014) (quoting Navarette, 572 U.S. at 397); see also United States v. Johnson, 63 F.3d 242, 245 n.2 (3d Cir. 1995) (noting that the Pennsylvania Vehicle Code permits an officer who has "reasonable and articulable grounds to believe that a vehicle or driver is in violation of the Vehicle Code" to stop the vehicle).

The Court concludes that under all of the facts, the traffic stop did not violate Defendant's constitutional rights because Officer Vargas possessed a "particularized and objective basis" for suspecting that Defendant committed a traffic violation. Not only was the traffic stop lawful in its inception, but Officer Vargas also legally expanded the stop by inspecting the interior of the car and asking questions of Defendant. See United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003) ("After a traffic stop that was justified at its inception, an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation.").

Once Defendant's car was stopped, Officer Vargas credibly testified to having reasonable suspicion that the car contained contraband. This came from the smell of burnt marijuana, with which Officer Vargas was familiar, two large bulges in Defendant's pockets, which Defendant told Officer Vargas contained currency, the discovery that Defendant's license was suspended, and Defendant's behavior. The reasonable suspicion standard, which has been approved by the Supreme Court and the Third Circuit, covers the factual circumstances of this case and requires this Court to conclude that Defendant's constitutional rights were not violated by the traffic stop.

### B. Probable Cause to Search the Vehicle and Seize Defendant's Property

Defendant also moves to suppress evidence on the grounds that the search of the car and

4

the seizure of items retrieved from the car, including Defendant's cell phones, were not supported by probable cause. The Government persuasively argues in response that Officer Vargas's search of Defendant's car, to which Defendant consented, as well as the seizure of items retrieved from the car, were lawful.

### a. Search of Defendant's Car

Though warrantless searches are "presumptively unreasonable" under the Fourth Amendment, there are "'a few specifically established and well-delineated exceptions.'" United States v. Ramos, 443 F.3d 304, 308 (3d Cir. 2006); United States v. Williams, 898 F.3d 323, 329 (3d Cir. 2018) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)). One exception is the automobile exception, which "permits law enforcement to seize and search an automobile without a warrant if 'probable cause exists to believe it contains contraband.'" United States v. Burton, 288 F.3d 91, 100 (3d Cir. 2002) (quoting Pennsylvania v. Labron, 518 U.S. 938, 940 (1996)). Probable cause exists if there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).

In the Third Circuit, "[i]t is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause." Ramos, 443 F.3d at 308; see also United States v. Pierce, 622 F.3d 209, 213 (3d Cir. 2010) ("It is also well-established that . . . a dog's positive alert while sniffing the exterior of the car provides an officer with the probable cause necessary to search the car without a warrant."). Here, because Officer Vargas credibly testified that he smelled burnt marijuana "coming from within" Defendant's car after smelling marijuana on the job "hundreds" of times before, there was probable cause to search the car. (ECF 235 at 21:23–22:11.)

5

### b. Seizure of Defendant's Property

In general, "the [Supreme] Court has viewed a seizure of personal property as *per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." United States v. Place, 462 U.S. 696, 701 (1983). "Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant," the Supreme Court has "permit[ted] seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." Id.; see, e.g., Riley v. California, 573 U.S. 373, 388 (2014) (noting that it was "sensible" for the defendants to concede, based on Supreme Court precedent, "that officers could have seized and secured their cell phones to prevent destruction of evidence while seeking a warrant").

Defendant contends that the Philadelphia Police Department's seizure of Defendant's cell phones for approximately three months prior to securing a warrant was unconstitutional. However, Defendant does not cite any precedential judicial authority barring the seizure of items found in a car following an arrest. Rather, Defendant unpersuasively seeks to analogize this case to Place, where the Supreme Court held that the warrantless seizure of an individual's luggage for 90 minutes to subject it to a dog sniff was unconstitutional in the absence of probable cause. 462 U.S. at 709–10. In contrast to Place, in this case, Officer Vargas had probable cause to search and seize the car and its contents, including the cell phones. See United States v. Somerville, No. 17-222, 2019 WL 1316413, at *8 (W.D. Pa. Mar. 22, 2019) (concluding that there was probable cause to seize currency and multiple cell phones, "well known tools of the drug trade[,]" from the

6

defendants following a traffic stop and arrests for drug offenses). Under the totality of the circumstances, the Philadelphia Police Department's seizure of Defendant's cell phones while seeking a search warrant was consistent with the Fourth Amendment.

## C. Probable Cause to Arrest Defendant

Defendant also challenges the seizure of his person by Officer Vargas, contending that his warrantless arrest was not supported by probable cause. The Government responds by arguing that Officer Vargas was justified in arresting Defendant after the search of the vehicle, which was supported by probable cause, revealed suspected contraband. The Court agrees.

Law enforcement officers "do not need a warrant to arrest an individual in a public place as long as they have probable cause to believe that person has committed a felony." Burton, 288 F.3d at 98 (citation and internal quotation marks omitted). Probable cause supports officers' arrests when, "'at the moment the arrest was made, . . . the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.'" Burton, 288 F.3d at 98 (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). The Court must view the facts through the lens of "an objectively reasonable police officer" based on the officer's experience. Burton, 288 F.3d at 99 (citation and internal quotation marks omitted).

Here, Officer Vargas testified that during the traffic stop, after smelling burnt marijuana and inquiring into the bulges in Defendant's pockets, Officer Vargas called for back-up and a drug detection canine. After backup arrived and a positive alert was provided by the canine, Officer Vargas informed Defendant that he was going to search the vehicle, and Defendant consented. The search revealed a clear plastic baby bottle containing a purple liquid and a vaporizer pen,

7

which Officer Vargas believed contained narcotics based on his experience and training. As a result, Defendant was arrested and charged with drug offenses in state court. From the perspective of an objectively reasonable police officer with Officer Vargas's experience, it is evident that there was probable cause to arrest Defendant for drug offenses.

## D. Exclusion of Evidence From Defendant's Cell phones

Following Defendant's arrest as a result of the traffic stop, Officer Vargas seized the bottle and vaporizer pen, two cell phones, mail, currency, and other items, and took them into custody.[2] Approximately three months after Defendant was arrested, the FBI took possession of the cell phones then in custody of the Philadelphia Police Department. Two days later, the FBI secured a search warrant for the cell phones. Defendant seeks to suppress evidence taken from the cell phones as fruit of the poisonous tree, the traffic stop, pursuant to the exclusionary rule.

The exclusionary rule "mandates that evidence derived from constitutional violations may not be used at trial because illegally derived evidence is considered 'fruit of the poisonous tree.'" United States v. Pelullo, 173 F.3d 131, 136 (3d Cir. 1999) (quoting Wong Sun v. United States, 371 U.S. 471, 487–88 (1963)). The Supreme Court has developed several exceptions to this rule, including two at issue here: the independent source doctrine and good faith.

### a. Independent Source Doctrine

The Government has responded to the Motion to Suppress with a persuasive argument that even if the initial traffic stop were unlawful, that illegality would not taint evidence from the cell phones because that evidence was obtained pursuant to a valid search warrant independent of the

---

[2] The Government has not indicated any interest in introducing the mail or other papers, such as bills, as evidence at trial.

8

stop. Put another way, the Government argues that the independent source doctrine warrants admission of the cell phones' contents even if the traffic stop were improper because, when the cell phones were in Philadelphia Police Department custody, the FBI investigation revealed that Defendant committed serious narcotic offenses through evidence independent of the traffic stop. The Court agrees that even if the seizure and search of Defendant's vehicle were unlawful, the independent source doctrine applies.

The independent source doctrine "permits the introduction of evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from lawful activities untainted by the initial illegality." Murray v. United States, 487 U.S. 533, 533 (1988). To determine whether the independent source doctrine applies, the Third Circuit asks two questions: (1) "whether the police would have applied for a warrant without the material tainted by a warrantless search"; and (2) whether "there was probable cause for the warrant to be issued." United States v. Price, 558 F.3d 270, 281 (3d Cir. 2009) (citation and internal quotation marks omitted). The answer to both questions is yes.

As to the first question, the FBI would have applied for a warrant to search Defendant's cell phones knowing that, as detailed in the warrant application: (1) Mr. Blanding's Instagram posts in Los Angeles, California, as indicated by location services, connected Mr. Blanding to co-Defendants identified in the Superseding Indictment pending in this case and featured slang terms used by drug dealers in narcotics trafficking; and (2) a toll analysis for the telephone number registered to Mr. Blanding revealed multiple contacts with co-Defendants in this case.

Regarding the second question, the warrant application contained probable cause without information gleaned from the stop. As noted above, probable cause exists where, "under 'the

9

totality-of-the-circumstances . . . the issuing magistrate [makes the] practical, common-sense decision [that], given all the circumstances set forth in the affidavit before him[,] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Price, 558 F.3d at 282 (alterations in original) (quoting Gates, 462 U.S. at 238); see also Burton, 288 F.3d at 103 (Where evidence is illegally obtained, "[a] search warrant need not be invalidated if the other evidence in the . . . affidavit independently would have established probable cause[.]").

The Court has reviewed the very detailed affidavit filed by Officer Stevens to support the issuance of a search warrant for the two cell phones seized from Defendant's vehicle. Without any reference to the traffic stop, the warrant was independently supportable by other information. The affidavit details the extensive, ongoing investigation into a drug trafficking organization involving Mr. Blanding and a number of co-Defendants identified in the Superseding Indictment; this investigation began in March 2017, approximately seven months prior to the traffic stop. The warrant application also explains that people who are involved in drug trafficking often utilize cell phones to communicate with co-conspirators to facilitate, plan, and execute drug transactions. Based on the evidence cited in the warrant application, as well as the application's statements regarding the characteristics of those involved in drug trafficking, there is an extensive showing of probable cause to substantiate the issuance of the search warrant.

### b. Good Faith Exception

Finally, the Government persuasively argues that even if the traffic stop were unlawful and the search warrant were not supported by probable cause, the good faith exception to the exclusionary rule applies. Under the well-known United States v. Leon case, 468 U.S. 897 (1984), a judicial officer's decision to issue a search warrant is effectively a finding that the Fourth

Amendment has been satisfied, and that the items seized and searched as a result of a warrant should not be suppressed. Id. at 921–22; see also United States v. Hodge, 246 F.3d 301, 307–08 (3d Cir. 2001) ("The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception.").[3]  Here, Defendant has not presented any evidence that the FBI failed to act in good faith in executing the warrant to search the cell phones seized during the traffic stop.  As a result, there is no basis to suppress any evidence from the cell phones as fruit of the poisoning tree.

### III. Conclusion

For the foregoing reasons, Defendant's Motion to Suppress evidence is denied.

An appropriate Order follows.

O:\Criminal Cases\18cr249 US v West et al\18cr249 Blanding Memorandum re Motion to Suppress.docx

---

[3] The Third Circuit has stated that the good faith exception does not apply in four situations:

(1) [when] the magistrate [judge] issued the warrant in reliance on a deliberately or recklessly false affidavit;
(2) [when] the magistrate [judge] abandoned his judicial role and failed to perform his neutral and detached function;
(3) [when] the warrant was based on an affidavit 'so lacking in indicia of probable cause so as to render official belief in its existence entirely unreasonable'; or
(4) [when] the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

Hodge, 246 F.3d at 308 (alterations in original) (quoting United States v. Williams, 3 F.3d 69, 74 n.4 (3d Cir. 1993) (citations omitted)).  None of these situations arise in this case.

11