# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| v. | |
| JAMAAL BLANDING | NO. 18-249-3 |

## MEMORANDUM RE: MOTIONS TO SUPPRESS

**Baylson, J.**                                                                                                 **October 10, 2019**

### I. Introduction and Background

The Second Superseding Indictment in this case charges nine defendants with multiple counts from their alleged involvement in a drug trafficking organization (the "DTO"). Presently before the Court are two motions filed by Defendant Jamaal Blanding ("Blanding") to suppress evidence that the Government intends to use at the trial in this case beginning November 4, 2019 with jury selection on October 31, 2019. The Court held an evidentiary hearing on Blanding's motions on October 7, 2019.

Both motions concern evidence seized from the interior of an apartment that Blanding periodically occupied. The apartment—which was owned or leased by Yanina Miller, an associate of Blanding's—is located at 1815 John F. Kennedy Boulevard, Apt. 2411, Philadelphia, PA 19103 (the "Miller Apartment").[1] The First Motion concerns a search warrant that was secured by the Government on June 1, 2018 to search the Miller Apartment and was executed on June 4, 2018. (ECF 401, Blanding Mot. to Suppress Evid. from June 1, 2018 Search Warrant) ("Blanding

---

[1] The Government argues that Blanding's motions must fail because he lacks standing, as he was not the tenant of the apartment where the searches occurred. (ECF 411, Gov't Opp'n to Blanding Mot. to Suppress Evid. Pursuant to Warrantless Search and Seizure at 4; ECF 426, Gov't Opp'n to Blanding Mot. to Suppress Evid. from June 1, 2018 Search Warrant at 3-4.) However, it is well-settled that "an overnight guest in a house ha[s] the sort of expectation of privacy that the Fourth Amendment protects." Minnesota v. Carter, 525 U.S. 83, 89 (1998). Because it is uncontested that Blanding was an overnight guest at the Miller Apartment at the time of both searches, he "may claim the protection of the Fourth Amendment." Id. at 90.

First Mot."). The Second Motion concerns cell phones that were seized following effectuation of an arrest warrant for Blanding at the Miller Apartment on October 18, 2018. (ECF 405, Blanding Mot. to Suppress Evid. Pursuant to Warrantless Search and Seizure) ("Blanding Second Mot."). For the reasons that follow, Blanding's Motions to Suppress will be **DENIED**.

## II. Legal Standard

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Under the Fourth Amendment, law enforcement generally must establish probable cause before invading a "constitutionally protected reasonable expectation of privacy." Katz v. United States, 389 U.S. 347, 360 (1967) (Harlan, J., concurring). A magistrate judge may determine probable cause exists if the totality of the circumstances indicate "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). A magistrate's determination should be upheld if "the affidavit on which it was based provided a substantial basis for finding probable cause." United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001).

The principal constitutional guidance on suppression of evidence obtained pursuant to a search warrant is United States v. Leon, 468 U.S. 897 (1984). Leon made clear that the exclusionary rule, which precludes use of evidence obtained in violation of the Fourth Amendment, is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." Id. at 906 (quoting United States v. Calandra, 414 U.S. 338, 348 (1974)). Application of the exclusionary remedy is appropriate only in "those unusual cases" where it will further the purposes of the rule—deterring police misconduct and incentivizing

2

law enforcement compliance with the Fourth Amendment. Id. at 918.

### III. First Motion to Suppress

Blanding's First Motion seeks suppression of evidence seized from the Miller Apartment on June 4, 2018 pursuant to the June 1, 2018 search warrant. The Court finds that probable cause supported the search warrant, and that the subsequent execution of the warrant was lawful.

#### A. Parties' Contentions

Blanding's First Motion—seeking suppression of evidence obtained during the June 4, 2018 search of the Miller Apartment—asserts that the warrant application did not satisfy the probable cause requirement and did not describe particularly the items to be seized. (Blanding First Mot. ¶¶ 9-13.) The Government responds that the application was supported by probable cause and identified with particularity the evidence sought, and that the agents relied in good faith on the warrant. (Gov't Opp'n to Blanding First Mot. at 5-7.) At the evidentiary hearing, Blanding did not present any evidence on the First Motion and his counsel agreed that the sufficiency of the June 1, 2018 warrant could be determined as a matter of law.

#### B. Discussion

The Court has previously adjudicated various suppression motions directed at search warrants executed in the course of investigating the DTO. Specifically, the Court addressed the constitutionality of a search warrant obtained for 3234 North Sydenham Street in United States v. Boyer, No. 18-249-6,-8,-9, 2019 WL 3717669 (E.D. Pa. Aug. 6, 2019). In that case, as here, the moving defendants challenged the sufficiency of the magistrate judge's probable cause finding. Id. at *3. However, because the Court found that a substantial basis supported the probable cause determination, the motions to suppress were denied. Id. at *6.

The contents of the search warrant upheld in Boyer are similar to the contents of the warrant Blanding attacks here. In Boyer, the affidavit that was presented to the magistrate described a car registered to the address sought to be searched that had been observed leaving the scene of a murder. Id. at *5. Similarly here, the magistrate's probable cause finding was based on a comprehensive affidavit that contained detailed allegations related to the drug conspiracy, the nature of Blanding's relationship with Miller, and his connections to the Miller Apartment. (Hr'g Gov't Ex. A ¶¶ 7-69.) Moreover, Blanding does not present any legal authority to warrant a conclusion different from the one reached in the prior case.

According appropriate "great deference" to the magistrate's probable cause determination compels the conclusion that a substantial basis supports the issuance of the June 1, 2018 search warrant. Leon, 468 U.S. at 914. Therefore, Boyer's First Motion, seeking suppression of evidence obtained during the June 4, 2018 search of 1815 John F. Kennedy Boulevard, Apt. 2411, is denied.

## IV. Second Motion to Suppress

Blanding's Second Motion seeks suppression of evidence seized from the Miller Apartment following Blanding's arrest on October 18, 2018 at the same location.[2] The Court finds that law enforcement was legally entitled to conduct a protective sweep of the Miller Apartment following Blanding's arrest, and that the cell phones taken were in the plain view of the officers lawfully in the Miller residence conducting the sweep. Therefore, the seizure of Blanding's phones[3] did not violate the Fourth Amendment.

---

[2] There is no dispute as to the legality of the arrest warrant that authorized Blanding's arrest. The arrest warrant followed the Superseding Indictment, issued on October 17, 2018, in which Blanding had been charged. (ECF 18.)
[3] The Court notes that there was disagreement at the evidentiary hearing as to whether Blanding owned the phones seized. On cross-examination, Blanding first testified that the phones seized from the apartment were not his, that he

### A. Record Evidence

During the evidentiary hearing, the Court received evidence on Blanding's Second Motion. FBI Special Agent Charles E. Simpson ("SA Simpson") testified credibly as to the circumstances of the arrest, describing how he, along with approximately eight other law enforcement officers, approached the door of Apartment 2411 and knocked around 6:00 A.M. on October 18, 2018. SA Simpson recounted how Blanding answered the door, was immediately taken into custody, and was placed in handcuffs.

In his Second Motion, Blanding asserts that after he "stepped into the hallway of his apartment, [he] shut[] his front door closed behind him." (Blanding's Second Mot. ¶ 4.) However, at the evidentiary hearing, Blanding's counsel introduced into evidence a sixteen-second video taken by a home surveillance camera located inside the Miller Apartment. The surveillance video showed Blanding answering the door and documented how the door began to swing shut as Blanding exited but was almost immediately propped back open. SA Simpson testified that law enforcement likely propped open the door to ensure there was no one lurking behind who could pose a threat to the arresting officers. The Court found, as a factual matter, that the door did not entirely close, because a small ray of light from the hallway was visible during the brief period between when Blanding opened the door to exit and when the door was propped back open.

Based on his ten years of experience and training as a federal law enforcement officer, SA Simpson explained the purpose of a protective sweep: to check for other individuals who could endanger law enforcement while an arrestee is secured. SA Simpson noted that a protective

---

did not know who they belonged to, and that there was no one else in the apartment at the time of his arrest. On re-cross-examination, Blanding testified that he did not know which phones were being referred to in the previous questioning. The Court assumes, for purposes of deciding this motion, that Blanding owned the phones that were taken from the couch in the Miller Apartment during the protective sweep on October 18, 2018.

sweep is limited to places where a person could be located, such as in bedrooms, under beds, and in closets. In relating the events leading up to the protective sweep of the Miller Apartment on October 18, 2018, SA Simpson explained that the arrest team did not know if Blanding was in the apartment alone, and that the FBI believed there was a "high likelihood" Blanding could have been accompanied by another individual, including Miller (who the apartment belonged to) or other members of the DTO. The arrest team did not encounter anybody during the protective sweep of the Miller Apartment, which was conducted simultaneous with Blanding's arrest. SA Simpson related that during the protective sweep, he observed a blanket and two cell phones on the couch, so he seized the cell phones in anticipation of a search warrant. The search warrant, which was obtained on October 25, 2018, covered not only the two phones seized from the Miller Apartment, but also seventeen other phones seized from various members of the DTO on October 18, 2018. (Hr'g Gov't Ex. E Attach. A.)

### B. Parties' Contentions

Blanding argues that the search of the Miller Apartment on October 18, 2018 was too invasive to be justified as a protective sweep. (Blanding Mem. of Law to Suppress Evidence at 5.)[4] Further, Blanding argues that because he voluntarily submitted himself to law enforcement, the exigent circumstances exception to the warrant requirement cannot apply. (Id. at 6-7.) In opposition, the Government contends that the arrest team was permitted to conduct a protective sweep of the Miller Apartment, so the officers appropriately seized the phones as they were in plain view. (Gov't Opp'n to Blanding Second Mot. at 5-6.)

---

[4] Blanding's Memorandum of Law was provided to the Court and to the Government at the evidentiary hearing; it is not docketed. Because the submission omits page numbers, the Court has assigned them as follows: the first page will be counted as page number 1 and numbering will continue consecutively thereafter.

## C. Discussion

The Fourth Amendment generally protects individuals against warrantless searches. However, the Supreme Court has delineated various exceptions to the warrant requirement; these exceptions authorize searches even where no warrant has been obtained. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Relevant to Blanding's Second Motion are (1) the exception for protective sweeps conducted incident to arrest, recognized in Maryland v. Buie, 494 U.S. 325 (1990), and (2) the exception for plain view seizure, recognized in Horton v. California, 496 U.S. 128 (1990).

### 1. The Law Enforcement Protective Sweep Was Constitutional

A protective sweep conducted by law enforcement is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." Buie, 494 U.S. at 327. The protective sweep doctrine is designed to safeguard the "interest of [arresting] officers in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack." Id. at 333.

Buie held that as an incident to arrest, law enforcement may, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets or other spaces immediately adjoining the place of arrest from which an attack could be launched." 494 U.S. at 334. Because the purpose of this search is to protect the arresting officers, it is "not a full search of the premises;" rather, it "may extend only to a cursory inspection of those spaces where a person may be found." Id. at 335. Additionally, Buie recognized that a warrantless search of a home is authorized if there are "articulable facts which, taken together with the rational inferences from those facts, would

warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id. at 334.

Thus, there are two dimensions to Buie: (1) a warrantless search of a home that occurs incident to an arrest is permitted if the search is "limited to those places 'immediately adjoining the place of arrest from which an attack could be immediately launched,'" United States v. White, 748 F.3d 507, 511 (3d Cir. 2014) (quoting Buie, 494 U.S. at 334); and (2) a warrantless search of a home that occurs incident to an arrest is justified if there is "reasonable and articulable suspicion that the areas being searched may 'harbor[] an individual' who poses a danger to those present at the scene of the arrest." White, 748 F.3d at 511 (quoting Buie, 494 U.S. at 335).

The protective sweep of the Miller Apartment that occurred simultaneous with Blanding's arrest was permissible under the first prong of Buie. Because the arrest of Blanding occurred on the threshold of the Miller Apartment, law enforcement was authorized to conduct a "cursory inspection of those spaces where a person may be found" limited to "dispel[ling] the reasonable suspicion of danger." Buie, 494 U.S. at 335-36. Compare United States v. Latz, 162 F. App'x 113, 119 (3d Cir. 2005) (applying the first prong of Buie because the search, which occurred "while [the arrestee] was on the porch … adjoin[ing] the door," only extended "to the area immediately inside the door"), with White, 748 F.3d at 511-12 (holding the first prong of Buie unavailable, and distinguishing Latz, because the defendant "was arrested approximately 20 feet outside of the entrance to his home"). Moreover, in a suppression motion filed by one of Blanding's codefendants, the Court validated a similar protective sweep conducted by law enforcement after their entry into a home to effectuate an arrest warrant. See Boyer, 2019 WL 3717669, at *8 ("[Because] the FBI had probable cause to believe that [defendant] was living at [the address] at

8

the time of his arrest … [t]he FBI agents were … permitted to enter the residence and conduct a protective sweep for their safety.").

Therefore, simultaneous with Blanding's arrest, law enforcement was permitted to enter the Miller Apartment and briefly inspect any adjoining spaces where a person may have been hiding. The evidence adduced at the suppression hearing indicates that the arrest team stayed within these bounds; there is no suggestion that the arresting officers who conducted the protective sweep looked in any area other than spaces large enough for a person.[5] Therefore, the protective sweep of the Miller Apartment conducted by law enforcement on October 18, 2018 did not run afoul of the Fourth Amendment.

### 2. The Plain View Seizure of Blanding's Phones Did Not Violate the Fourth Amendment

A law enforcement officer is entitled to seize, without a warrant, evidence that is found in plain view during a lawful observation of the area from which the evidence is seized. To be constitutional, a plain view seizure must satisfy three requirements: (1) the evidence was in plain view; (2) the "incriminating character" of the evidence was "immediately apparent;" and (3) the officer had "a lawful right of access to the object itself." Horton, 496 U.S. at 136-37.

---

[5] United States v. Vasquez-Algarin, 821 F.3d 467 (3d Cir. 2016), cited by Blanding in his Memorandum, is not to the contrary. (Blanding Mem. of Law to Suppress Evidence at 4.) Vasquez-Algarin sets forth the standard for assessing the constitutionality of police entry into a home to execute an arrest warrant. Id. at 472. The circumstances of the entry into the Miller Apartment are distinguishable from the entry in Vasquez-Algarin. Here, the arrest occurred on the apartment's threshold and the entry was part of a simultaneous protective sweep; by contrast, in Vasquez-Algarin, law enforcement broke into a third-party's apartment to effectuate an arrest warrant without having probable cause to believe that the subject of the warrant lived inside. Id. at 482. Blanding contends that the entry was improper under Vasquez-Algarin because law enforcement lacked "reasonable belief that … Blanding was inside the apartment" after he voluntarily submitted himself to the arrest team. (Blanding Mem. of Law to Suppress Evid. at 4.) However, this argument does not address the necessity of conducting a protective sweep for confederates, friends, or others who might have been hiding in the Miller Apartment.

The seizure of the cell phones by the arrest team on October 18, 2018 was constitutional because all three requirements of the plain view doctrine are satisfied. First, SA Simpson testified, and the home surveillance video introduced by defense counsel confirmed, that the living area and couch were immediately visible upon entry to the apartment. Further, SA Simpson testified that the cell phones, which were lying on the couch, were unobstructed. Therefore, the cell phones could be plainly viewed by law enforcement, in satisfaction of the first Horton requirement. Second, as SA Simpson testified, and the Government summarized, the FBI had seized phones from various members of OBH on prior occasions as part of the investigation, and "[t]he information contained on the phones …, especially those previously seized from Blanding, contained highly incriminating evidence." (Gov't Opp'n to Blanding Second Mot. at 4.). SA Simpson's testimony satisfies the probable cause standard for the "immediately apparent" requirement, because it underscores the existence of facts that "would warrant a man of reasonable caution in the belief … that certain items may be contraband … or useful as evidence of a crime." Texas v. Brown, 460 U.S. 730, 742 (1983); see also United States v. Ballard, No. 11-455, 2012 WL 28079, at *14 (E.D. Pa. Jan. 5, 2012) (Surrick, J.) (finding the "immediately apparent" requirement satisfied based on contemporaneous law enforcement observation of evidence associated with the crime). Finally, the arrest team had a lawful right of access because, as discussed, the officers lawfully conducted a brief sweep of the Miller Apartment. See United States v. Gatson, 744 F. App'x 97, 100 (3d Cir. 2018) ("[T]he plain-view exception extends to protective sweeps."). In conclusion, the seizure of the cell phones from the Miller Apartment following Blanding's arrest on October 18, 2018 did not violate the Fourth Amendment, and Blanding's Second Motion is denied.

## V. Conclusion

For the foregoing reasons, Blanding's Motion to Suppress Evidence Obtained from the June 1, 2018 Warrant (ECF 401) and Motion to Suppress Evidence Pursuant to a Warrantless Search and Seizure (ECF 405) are **DENIED**.

O:\Criminal Cases\18cr249 US v West et al\18cr249 Blanding Memorandum 10072019.docx